UNITED STATES of America,
Plaintiff-Appellee,

v.

The STATE OF FLORIDA and Gulf Power Company et al., Defendants,

John R. Tucker et al., Defendants-Appellants.

No. 72–3563.

United States Court of Appeals,
Fifth Circuit.

July 12, 1973.

J. McHenry Jones, Philip D. Beall, John M. Coe, Attys., Pensacola, Fla., for defendants-appellants.

William Stafford, Jr., U. S. Atty., Pensacola, Fla., Dennis J. Whittlesey, Atty., Peter R. Steenland, Dept. of Justice, Washington, D. C., Daniel S. Dearing, Atty., Chief Trial Counsel, Tallahassee, Fla., Kent Frizzell, Asst. Atty. Gen., Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before TUTTLE, GODBOLD and MORGAN, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

The United States, owner of the Naval Live Oak Reservation, a 1,377 acre tract of land located in Santa Rosa County, Florida, brought suit in federal district court to quiet title and obtain a declaratory decree as to the tract. The district court found the United States to be the owner and holder of the fee simple title to the land, subject to certain easements and conditions.[1] We affirm.

### History

The United States first obtained this land by various conveyances executed between 1828 and 1832. In 1869, all records of these conveyances were destroyed in a court house fire. State taxes were assessed on the reservation in 1870, 1871 and 1872. As a result of nonpayment of these taxes, tax deeds were executed by the State of Florida to certain private individuals.[2] Taxes continued to be assessed on portions of this land until 1932, when the Governor of

---

1. The district court's exact holding was: The United States of America is held and found to be the owner and holder of the fee simple title to the land involved herein, less, however, the portion thereof lying below the mean high tide line. Its title, however, is subject to the 120-foot highway easement. The deed itself conveyed the land "subject to existing easements for roads and utilities." Should there be any, then existing and still extant, not dealt with in this decision, its title would also be subject to them. Respecting all the defendants remaining in the suit, it is entitled to the immediate possession of the portion of the property owned by it, except for the portion thereof contained in the 120-foot easement, and with the further exception of the times allowed herein for the state regarding the 40-foot widening strip, and for the Boy Scouts, Girl Scouts and Gulf Power on the portions used by them. Except as limited herein.

2. The heirs and assignees of these individuals are parties to this litigation and are referred to herein as Group A.

Florida, pursuant to his statutory authority, executed a document which ceded to the United States all the land in question. Between 1932 and 1947, the United States granted various permits and licenses concerning the use of this land.[3]

The United States, in 1947, conveyed all of this land back to the State of Florida by a quit claim deed. Part of this conveyance specifically provided:

(1) That said property shall be used exclusively for public park purposes.

(2) That upon breach of the aforesaid restriction by the part [sic] of the second part or any subsequent transferee whether caused by the legal inability of said party of the second part or subsequent transferee or otherwise, all right, title and interest in and to the property herein transferred shall, at the option of the party of the first part, revert to the party of the first part upon demand made in writing by the War Assets Administration, or its successor government agency, . . .

Immediately after the State of Florida received this land from the United States it brought action to quiet title against the successors in title of the private individuals who purchased the tax deeds for 1870, 1871 and 1872, hereafter referred to as Group A. After lengthy litigation, the Supreme Court of the State of Florida found that the state lost its claim to the land. Daniell v. Sherrill, 48 So.2d 736 (1950). Pursuant to the Court's opinion, the private individuals, Group A, were found to be owners of the property in question, *subject to the terms of the 1947 conveyance from the United States to the State of Florida*. On February 25, 1970, the United States gave notice of its intention to exercise the reverter of the 1947

conveyance and demanded revesting of the title to the land. This right of re-entry and reverter was grounded on that portion of the 1947 conveyance which provided that the land should be used "exclusively for public park purposes."

The United States then instituted this action to quiet title and for declaratory judgment in the Federal District Court for the Northern District of Florida on January 29, 1971. After a non-jury trial, the district court found that the property had not been used exclusively for public park purposes and ordered the title vested in the United States. The district court further found that defendant, Group A's, arguments concerning the deed, laches, estoppel, waiver, relief against forfeiture, and a Florida limitations statute were all without merit. We agree.

### Issues

The contentions of the appellants fall into two categories, contentions of fact and contentions of law. First, the appellants argue that the district court was incorrect in its finding that the Naval Live Oak Reservation was not used exclusively for public park purposes. Secondly, appellants dispute the findings that the operation of the reverter clause could not be blocked by government regulations, terms of the 1947 deed, laches, waiver, or estoppel.

### I

 It is urged by appellants that the district court ruled incorrectly on the facts presented below. Appellants contend that clear and convincing evidence was presented which could leave little doubt that the reservation was used for public park purposes.[4]

 Rule 52(a) of the Federal Rules of Civil Procedure provides that

---

3. These permits and licenses were to local Boy Scout and Girl Scout groups for camping purposes and to the local power company for power line right of ways.

4. In fact, what was presented at trial was both testimentary and documentary evidence as to what use the land had been put. In addition to use by both Boy and Girl Scouts, there was evidence as to a temporary pistol range, an elephant grave, a garbage dump, and other rather diverse uses by diverse groups of individuals.

the findings of fact by a district court in actions tried without a jury shall not be set aside unless "clearly erroneous". United States v. United States Gypsum Company, 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948), reh. den. 333 U.S. 869, 68 S.Ct. 788, 92 L.Ed. 1147 (1948).[5] Under this rule the determination of the factual content of ambiguous testimony is for a trial court, and such determination can be set aside on review if "clearly erroneous". Guzman v. Ruiz Pichirilo, 369 U.S. 698, 82 S.Ct. 1095, 8 L.Ed.2d 205 (1962). The rule is also applicable insofar as the district court's conclusion is based on inference drawn from documents or undisputed facts. United States v. Singer Manufacturing Company, 374 U.S. 174, 83 S.Ct. 1773, 10 L. Ed.2d 823 (1963).

■ Furthermore, since the jurisdiction of this court is appellate, we have no right to re-try the issues of fact *de novo* or substitute our judgment with respect to such issues. United States v. United States Gypsum Company, *supra*; Guzman v. Ruiz Pichirilo, *supra*; United States v. Singer Manufacturing Company, *supra*. The function of this court is to determine whether, as a matter of law, the findings sustain the judgment. If, however, the findings of the district court are unsupported by substantial evidence, then the lower court's decision may be set aside.[6]

The evidence presented before the district court included over 200 exhibits and testimony by more than fifteen individuals. Included in the exhibits were pictures of the land in question, various publications concerning parks, actual no trespassing signs taken from the property, and other similar items. Witnesses testified as to their knowledge of the actual use to which the land in question had been put. The record on appeal also included approximately 170 documents representing the legal proceedings below. This court has examined all the exhibits, testimony and documents involved and we are left with the definite and firm conviction that a mistake has not been committed.[7]

■ Furthermore, this court is well aware that in many situations a trial court's findings of a particular fact shade into its conclusion of law. In cases in which the trial court's findings of fact are based on non-demeanor evidence, the trial court has only to draw the proper conclusions of fact and law from the evidence presented. This court has taken cognizance of that problem in reviewing the district court below, and although this can possibly be considered an unclear area of the law, this court does not find the decision of the district court in the least bit unclear.[8]

Moreover, this court has found that even if it did have the power and au-

---

5. The pertinent part of Rule 52(a) to this case is as follows:

 . . . Findings of fact shall not be set aside unless clearly erroneous . . .

6. A Court of Appeals may reverse where there is evidence which, if credible would be substantial, the force and testimony considered as a whole convinces the Court that the finding is so against the great preponderance of the credible testimony that it does not reflect or represent the truth and right of the case. United States v. Schultetus, 5th Cir. 1960, 277 F.2d 322, cert. den. 364 U.S. 828, 81 S.Ct. 67, 5 L.Ed.2d 56 (1961).

7. The Supreme Court has held "A finding [of fact] is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is

left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Company, 333 U.S. 364 at 395, 68 S.Ct. 525 at 542, 92 L.Ed. 746 (1948).

8. At one time many courts of appeals took the position that Rule 52(a) did not apply to inferences drawn from undisputed facts, because the trial court's findings did not depend on its opportunity to observe the demeanor of the witnesses, a court's refusal to apply Rule 52(a) is now acceptable only when the appellate court is finding "ultimate" facts from, or applying correct legal standards to, undisputed facts. Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1970).
 Therefore, under Rule 52(a), not only are findings of fact made by the district court

thority to review this case *de novo*, it could only agree with the district court when that court said: " . . . it appears by clear, convincing and satisfactory evidence that the land has not, since the conveyance in 1947 and during the times pertinent to this decision, been used exclusively for public park purposes; to a large extent it has not been used at all and the uses made of it cannot be characterized as uses for public park purposes."

## II

Appellants also argue that even if the terms of the 1947 conveyance were not complied with, the government is precluded from exercising its right of re-entry under the reverter clause because of any one of the following various factors: government regulations, terms of the 1947 deed, laches, waiver, and estoppel.

■ This court, having considered appellants' arguments as to government regulations and terms of the 1947 deed, finds those arguments without merit.[9] Appellants' contentions as to laches, waiver and estoppel will be briefly discussed by this court because of the variety of interpretations which can be placed on these terms. They, however, also are equally without merit.

■ Appellants urge that the United States, as to this property, is acting in a proprietory function rather than a governmental one. This court finds that the ceding of land by the United States government to the State of Florida for public park purposes is a governmental function, the action itself being for the benefit of the public.

■ Whether the defense of estoppel may be asserted against the United States in actions instituted by it depends upon whether such actions arise out of transactions entered into in its proprietary capacity or contract relationships, or whether the actions arise out of the exercise of its powers of government. The United States is not subject to an estoppel which impedes the exercise of the powers of government, and is not estopped to deny the validity of a transaction or agreement which the law does not sanction. Sanitary Dist. v. United States, 266 U.S. 405, 45 S.Ct. 176, 69 L.Ed. 352 (1925); Utah Power & L. Co. v. United States, 243 U.S. 389, 37 S.Ct. 387, 61 L.Ed. 791 (1916). Nor does an estoppel arise through an act or representation made by an officer or agent without authority to act for the government in the premises. Wilber Nat. Bank v. United States, 294 U.S. 120, 55 S.Ct. 362, 79 L.Ed. 798 (1935); Jeems Bayou Fishing & Hunting Club v. United States, 260 U.S. 561, 43 S.Ct. 205, 67 L.Ed. 402 (1922).

■ Furthermore, appellants claim that by certain actions of the United States it acknowledged that the land was being used for public park purposes and thereby the terms of the deed

---

binding on an appellate court unless clearly erroneous, but also the rule itself applies to factual inferences drawn from undisputed basic facts.

9. After examining the regulation in question, War Assets Administration Regulation 1, Section 403.19(d)(2), this court finds that the regulation was intended only as a bottom limit or floor, below which the government should not go. That limit was 20 years, but there was no upward limit on government action. The terms of the 1947 deed are clear in their meaning and in no way conflict with regulation. The regulation itself provides:

(2) Transfers of property hereunder shall be subject to the following terms, conditions, reservations, and restrictions:
(i) the property shall be used and maintained for the purpose for which it is conveyed for a period of *not less than twenty (20) years*: Provided, That in the event such property ceases to be used or maintained for such twenty (20) year period, the property shall in its then existing condition, at the option of the War Assets Administration, or successor agency, revert to the United States.
(ii) *Such other additional terms, reservations, restrictions, and conditions as may be included by the War Assets Administration.* (emphasis added)

were being complied with. It should be remembered, however, that the United States is not bound by declarations of its agents founded upon a mistake of fact unless it clearly appears that the agent was acting within the scope of his authority and was empowered in his capacity as agent to make such declarations. Lee v. Munroe, 11 U.S. (7 Cranch) 366, 3 L.Ed. 373 (1813). The mere mention, therefore, of a Department of Interior official that this land was being used for park purposes is not binding upon the United States in this case.

██ Appellants have also asserted that the United States cannot now exercise a right of re-entry because of laches; that is, the United States failed to exercise its legal right within the proper time. Not only can laches not be applied as a defense against the United States, but, even if it could, this is not the case for laches. Mount Vernon Mortg. Corp. v. United States by Atty. Gen., 1956, 98 U.S.App.D.C. 429, 236 F.2d 724, cert. den. 352 U.S. 988, 77 S.Ct. 386, 1 L.Ed. 2d 367 (1957); Engel v. United States, 6th Cir. 1958, 258 F.2d 50. See also, United States v. Silliman, 3rd Cir. 1948, 167 F.2d 607, cert. den. 335 U.S. 825, 69 S.Ct. 48, 93 L.Ed. 379 (1948).[10]

This court then finds that the United States is not subject to the defenses of laches, waiver or estoppel by virtue of its sovereign immunity and that it is performing a governmental function in ensuring that this land is properly used as a public park. Even if the United States were found to be acting in a proprietory manner as opposed to a governmental manner, the defenses themselves, even though applicable, this court finds would not be valid in this case. The appellants were well aware that the United States was planning to enforce its right of re-entry if a public park were not maintained and, furthermore, the United

States, throughout the period of time from 1947 to the present, has shown an interest in the status of this land. Therefore, in the conclusion, this court finds that the United States is the rightful owner of this land and the lower court in all respects is

Affirmed.

---

10. It is interesting to note that the United States is not bound by laches even in extreme cases. In the case of United States v. Stein, D.C.Me.1958, 163 F.Supp. 916, the United States there was not subject to the defense of laches in enforcing its right in a claim filed in 1953 for maintenance furnished a Civil War veteran periodically between 1881 and 1908.