GEORGE W. BENNETT BRYSON & COMPANY, LTD., Plaintiff-Appellee,

v.

NORTON LILLY & COMPANY, INC., Defendant-Appellant.

No. 74-1357.

United States Court of Appeals, Fifth Circuit.

Oct. 23, 1974.

1. Either as charged in Count V or Count VI, or both.

Richard F. Ralph, Donald F. Geffner, Miami, Fla., Cicero C. Sessions, Robert E. Barkley, Jr., New Orleans, La., for defendant-appellant.

Douglas D. Batchelor, Samuel A. Brodnax, Jr., Rex B. Guthrie, Kermit G. Kindred, Timothy J. Armstrong, Miami, Fla., for plaintiff-appellee.

ON PETITION FOR REHEARING AND PETITION FOR REHEAR-
ING EN BANC

Before BROWN, Chief Judge, and THORNBERRY and AINSWORTH, Circuit Judges.

AINSWORTH, Circuit Judge:

This Florida diversity suit, in which plaintiff was awarded judgment for $17,795.30, came to this Court in a fairly common posture—the losing party contesting the district court's findings of fact after a bench trial. After a careful examination of adequate briefs

filed in this case, and a close scrutiny of the relatively small record, we concluded that the district court's findings were not clearly erroneous under Fed.R.Civ.P. 52(a), and affirmed with a *per curiam* opinion. 498 F.2d 328. Appellant's counsel has now petitioned for an en banc rehearing, or, in the alternative, rehearing by the assigned panel. This, too, is not uncommon, but counsel's petition is remarkable for its intemperate and excessive averments that (1) our affirmance is "inconceivable" because the record "firmly and unequivocally establishes the correctness of Norton Lilly's position";[1] (2) our denial of oral argument impaired "full and fair determination" of this matter;[2] and (3) our decision necessarily indicates a "patent" lack of careful consideration and scrutiny of this cause by the *judges* on the panel.[3] We are reluctant to dignify these assertions with a response, but we do so to reassure litigants of the solicitude with which we handle summary cases under Local Rule 18.

## I. THE MERITS OF THE APPEAL

Prior to January 27, 1972, plaintiff Bryson had acted as an out-port agent for Sea Way Lines, Inc., a wholly-owned subsidiary of Trans-Caribbean Shipping, Ltd. Trans-Caribbean was also the sole stockholder of Sea Hawk, Inc., Sea Saga, Inc., and Sea Challenge, Inc., three Liberian corporations each owning a single vessel; Sea Way had operated the three vessels pursuant to an unwritten charter agreement. On January 27, 1972, Norton Lilly acquired all of the capital stock in Sea Way Lines, Inc., and the three Liberian corporations, thus gaining sole possession of Sea Way Lines and the ships it operated. On February 28,

1972, representatives of Norton Lilly met with representatives of Bryson in St. John's, Antigua, "for the purpose of reviewing the present status of our business and establishing future procedures."[4] After the conversations between the representatives but still on February 28, the discussions were "confirmed" by a letter dated February 28, 1972, from Norton Lilly to Bryson.[5]

Norton Lilly has contended throughout that it acted only as agent for a disclosed principal (Sea Way Lines, Inc.), and as such is not directly liable for Bryson's costs and expenditures for Sea Way's ships (which were actually ships owned by three Liberian corporations, each of whose stock was wholly owned by Norton Lilly). Norton Lilly's argument is that Sea Way is responsible for the debt in question, notwithstanding that Sea Way Lines, Inc., its wholly-owned subsidiary, is inoperative and, presumably, financially embarrassed. The district court found as fact, however, that pursuant to the meeting held February 28, 1972, at plaintiff Bryson's office in St. John's, Antigua, Norton Lilly's representatives agreed to place Bryson "in funds" if Bryson's disbursements on behalf of the vessels exceeded freight collections.[6] On Norton Lilly's request, Bryson began to defray such costs, and billed Norton Lilly directly. It is undisputed that Bryson financed the vessels' costs out of its own funds at Norton Lilly's request, that invoices for such expenses were billed directly to Norton Lilly,[7] and that Norton Lilly accepted both the disbursements and the statements of account for services rendered without objection or comment of any kind.

1. Petition for Rehearing at 3, 5.

2. *Id.* at 4–5.

3. *Id.* at 2, 3, 13, 14 (emphasis in original).

4. See App. 202 (letter from Norton Lilly to Bryson).

5. See App. 71–72; the text of the letter is at App. 203–204.

6. Findings of Fact 7–9, App. 154–155.

7. The invoices and other correspondence of Bryson were addressed:
 Messrs. Norton, Lilly & Co., Inc.
 c/o Messrs. Seaway Lines, Inc.
 530 Biscayne Blvd.
 Miami, Florida 33132
 530 Biscayne Blvd. was the address of Norton Lilly's Miami office.

■■ Under Florida law, which we are *Erie*-bound to apply, Norton Lilly's acceptance of Bryson's services together with its failure to object to the form or content of the statements billed directly to it, created a prima facie case against Norton Lilly itself, a presumption that it had acquiesced in the debt.

> An account stated is prima facie evidence of the correctness of the items and the liability of a party therefor. This presumed correctness may be overcome by proof of fraud, mistake or error. However, the burden of establishing fraud, mistake or error is upon the party asserting it and unless he disposes of this burden, the presumptive correctness of the stated account becomes conclusive.

Gendzier v. Bielecki, Fla., 97 So.2d 604, 608 (citations omitted).[8] The district court properly recognized that the facts and circumstances in the case created a prima facie case for plaintiff Bryson, a case which defendant-appellant was obligated to overcome.[9]

Thus, Norton Lilly entered the courtroom disadvantaged. How did it purport to meet this problem? By calling one—and only one—witness, Mr. Franco, Treasurer of Norton Lilly & Company. Franco stated that in the February 28, 1972 meeting, the Norton Lilly representatives explained "very carefully" that Norton Lilly had acquired all of the stock of Sea Way Lines, Inc. and was acting as managing agent for the line.[10] He testified that "very clear" instructions were given that Norton Lilly was to be billed as agent for Sea Way.[11]

Plaintiff Bryson, however, called three witnesses whose understanding of the meeting and the business relationship was quite different from that related by Mr. Franco of Norton Lilly. Mr. Rothstein, Managing Director of Bryson, was in attendance at the February 28 meeting. He testified, "[T]he clear understanding was that we were dealing with Norton Lilly . . . ."[12] This impression was apparently bolstered by the fact that only representatives of Norton Lilly met with Bryson's people; no Sea Way officers or employees were in attendance at the meeting.[13] Mr. Hill, Manager of Bryson's Shipping Department, also attended the February 28 meeting. He stated that Mr. Carl, Norton Lilly's Miami Manager and Vice President of Sea Way, who was present at the February 28 meeting, indicated that Bryson would be dealing with Norton Lilly now that it had purchased Sea Way Lines.[14] Hill also testified that, according to the directions of Norton Lilly employees, the old account in Sea Way's name was closed out and a new account in the name of Norton Lilly was opened.[15] The final witness for plaintiff was Mr. Duarte, the President of Sea Way Lines, Inc., who testified that Sea Way's policies were made directly by Norton Lilly, that he had nothing to do with any funds of Sea Way Lines, and that he was Sea Way's sole employee.[16]

---

8. *See also* 1 Fla.Jur., Accounts & Accounting §§ 5, 7. Of course, there is no such presumption of acquiescence to a debt by a person who has had no dealings whatever with the sender of the account. Braun v. Noel, 188 So.2d 564, 565 (3d D.C.A.Fla.1966); C & H Contractors, Inc. v. McKee, 177 So.2d 851 (2d D.C.A.Fla.1965). Appellant concedes, however, that it was engaged in a regular course of business with Bryson—it merely contends such business was transacted only as an agent.

9. App. 30–32.

10. *Id.* at 72.

11. *Id.* at 78–79.

12. *Id.* at 52.

13. *Id.* at 62–63. The absence of Sea Way officers or employees is understandable, however, in that all Sea Way Lines employees, save one, the President of Sea Way, became Norton Lilly employees. The members of Sea Way's board of directors resigned and were replaced by Norton Lilly personnel.

14. Q. Were there any representations made to you about who you would be dealing with in the future?
A. Yes. We were told that we would be dealing with Norton Lilly.
App. at 119.

15. *Id.* at 125–126.

16. *Id.* at 144.

In view of the initial assumption that Norton Lilly was directly liable, together with the foregoing testimony, was the district court clearly erroneous in concluding that Norton Lilly was itself liable? It must be remembered that a trial court's findings of fact are clearly erroneous only when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).[17] As Judge Morgan, writing for the Court, recently stated in United States v. State of Florida, 5 Cir., 1973, 482 F.2d 205:

Rule 52(a) of the Federal Rules of Civil Procedure provides that the findings of fact by a district court in actions tried without a jury shall not be set aside unless "clearly erroneous". . . . Under this rule the determination of the factual content of ambiguous testimony is for a trial court, and such determination can be set aside on review if "clearly erroneous" . . . . The rule is also applicable insofar as the district court's conclusion is based on inference drawn from documents or undisputed facts. . . .

Furthermore, since the jurisdiction of this court is appellate, we have no right to re-try the issues of fact *de novo* or substitute our judgment with respect to such issues. . . . The function of this court is to determine whether, as a matter of law, the findings sustained the judgment. If, however, the findings of the district court are unsupported by substantial evidence, then the lower court's decision may be set aside.

*Id.* 482 F.2d at 207–208 (citations omitted).

Moreover, the version of the February 28 meeting most credible and reasonable under the circumstances was for the district judge to decide. Cf. Dillon v. M. S. Oriental Inventor, 5 Cir., 1970, 426 F.2d 977, 978; Chaney v. City of Galveston, 5 Cir., 1966, 368 F.2d 774, 776. Given our limited scope of review, we could not say we had a "definite and firm conviction" that the district court erred in deciding the case as it did. Reasonable minds could possibly differ with the court's conclusion, but the district court was *not* clearly wrong.

Norton Lilly makes much of the fact it addressed its mail and signed the February 28 letter "as agents" for Sea Way. This of course ignores the Florida account stated presumption, but the argument is in any case superfluous. Even if Norton Lilly was Sea Way's agent, and only that, this does not of itself preclude a finding of direct liability. It is hornbook law that an agent can become personally liable for his principal's debt by express promise or agreement. It is also Florida law. Blount v. Tomlinson, 1909, 57 Fla. 35, 48 So. 751, 754. As stated by the Restatement of Agency 2d, § 302, comment c: "The inference that the agent is not a party to a contract may be overcome by proving other facts connected with the transaction. . . . In such cases, it is for the triers of fact to determine what the parties intended." The prima facie case for direct liability, combined with the testimony above, is certainly sufficient to prove that, even if Norton Lilly was Sea Way's managing agent only and signed

---

17. Appellant takes issue with the district court's adoption of plaintiff's proposed Findings of Fact and Conclusions of Law. The clearly erroneous test is to be applied whether the lower court personally prepares such findings and conclusions or adopts those submitted by counsel. Railex Corp. v. Speed Check Co., 5 Cir. 1972, 457 F.2d 1040, 1042, cert. denied, 409 U.S. 876, 93 S. Ct. 125, 34 L.Ed.2d 128 (1972); United States v. El Paso Natural Gas Co., 376 U.S. 651, 656, 84 S.Ct. 1044, 1047, 12 L.Ed.2d 12 (1964); Louis Dreyfus et Cie. v. Panama Canal Co., 5 Cir., 1962, 298 F.2d 733, 737–739; Edward Valves v. Cameron Iron Works, 5 Cir., 1961, 289 F.2d 355, 356. We nonetheless reiterate our disfavor of the occasional use of this practice by district judges.

the contract as such, it was nonetheless obligated directly by its express promises to Bryson.[18]

With one fully satisfactory reason for affirming the district court's finding of liability, we need not search for another. But we would note that there is no equitable reason whatever for Norton Lilly's denial of liability. Norton Lilly owned all of the stock in the three Liberian corporations holding legal title to the "Sea Way vessels." Norton Lilly was formally empowered to man, operate and supply the vessels. All employees associated with Sea Way Lines, Inc. became employees of Norton Lilly except the President of Sea Way, Mr. Duarte—but Norton Lilly's Treasurer, Mr. Carl, supervised even Duarte's activities.[19] All members of Sea Way's board of directors were Norton Lilly employees. All-cash receipts from Sea Way activities were ordered to be sent directly to Norton Lilly. Norton Lilly requested Bryson to make disbursements for the vessels out of Bryson's own funds. Notwithstanding all this, Norton Lilly continues to assert that Sea Way Lines, Inc., and not itself, is the party liable for these expenses, apparently oblivious to the fact that Sea Way, its wholly-owned subsidiary, is in financial straits. We need not and do not decide whether Florida law would find such a unity of interest as to justify ignoring the separation of corporate entities. But surely we may properly look askance at Norton Lilly's claim that we are dealing here with a standard principal-agent relationship, and that it was acting in accordance with customary business procedures.

## II. THE DENIAL OF ORAL ARGUMENT

 As the foregoing points out, this case turned almost entirely on factual matters and inferences therefrom. We were given the benefit of good briefs, and appellant, in its Reply brief, was given the opportunity to reiterate its contentions and to challenge appellee's analysis of the case. This was not a case turning on unique or largely legal issues. No voluminous records prevented us from reading the entire trial transcript and exhibits. This case did not involve issues of broad social policy, new questions of governmental prerogatives and personal freedoms, or matters of important precedential value. Rather, this controversy was determined by factual issues which we were not entitled to assess anew.

For these reasons and others, the three judges on the panel unanimously agreed that oral argument was not necessary for a full and fair resolution. It should be emphasized that this decision was reached only *after* all three panel members had closely scrutinized the briefs and appendix. Moreover, as the Supreme Court has stated, "[D]ue process of law has never been a term of fixed and invariable content. This is as true with reference to oral argument as with respect to other elements of procedural due process." F.C.C. v. WJR, The Goodwill Station, Inc., 337 U.S. 265, 275, 69 S.Ct. 1097, 1103, 93 L.Ed. 1353 (1949) (citations omitted). *See also* Huth v. Southern Pacific Co., 5 Cir., 1969, 417 F.2d 526, 529–530. Indeed, the Third Circuit, in a recent en banc decision, rejected a contention that denial of oral argument and disposition by summary decision pursuant to Third Circuit Local Rule 12(6) constitute a violation of due process as guaranteed by the Fifth Amendment. N.L.R.B. v. Local No. 42, Int. Ass'n of Heat & F.I. & A. Workers, 3 Cir., 1973, 476 F.2d 275. We agree with the Third Circuit on the constitutional issue. Oral argument is

---

18. As to the issue of whether any direct representations were made by Norton Lilly to Bryson, we note that the February 28 letter contained the following provision: "It is understood that if disbursements exceed freight collections, Norton Lilly then will replace Agents [Bryson] in funds." App. 203. This statement, in its context, is ambiguous, but it could, and probably did, reinforce Bryson's understanding that it might look directly to Norton Lilly if Bryson were forced to defray costs out of its own funds.

19. See App. at 202 (letter from Norton Lilly to Bryson).

not always helpful, nor is it the *sine qua non* of fair dispositions. In many cases, oral argument is merited and may be essential, but this certainly is not one of those cases.

## III. THE PROCEDURE OF THE PANEL

Part I of this opinion illustrates not only that the record supports the decision of the panel, but also that we did indeed carefully consider and scrutinize the record in making our determination. Full and meticulous consideration is given to all cases, whether summarily decided or orally argued. In Murphy v. Houma Well Service, 5 Cir., 1969, 409 F.2d 804, Chief Judge Brown, as spokesman for this Court, outlined our screening procedures and emphasized the precautions taken to assure fairness and full scrutiny.

The important thing is that this screening is a judicial one performed by Judges, not the Clerk or other non-judicial staff. It is done through a series of standing panels of three Judges, made up of Active Fifth Circuit Judges only. Cases are not submitted to a screening panel until all briefs are in or the allowable FRAP time has expired. When cases are ripe for screening they are submitted to the screening panels at random, without reference to subject matter, state of origin, or any other criteria.

As an added safeguard against even the remote possibility of oral argument being denied by a single Judge, the procedure calls for unanimous panel action to put the case on the Summary Calendar. Carrying it a step further, if after placing it on the Summary Calendar, any member of the panel has doubts or unresolved differences with the proposed opinion, the case is automatically removed and reclassified for full or limited argument. In other words, the classification of the case and its disposition must be unanimous. This demands informed, individual action by each

panel member which will always equal, if it does not exceed, that required for an orally argued case. . . .

*Id.* at 806. The system thus requires double unanimity—three active judges must agree both to the decision on the merits of the case and to the lack of warrant for oral argument, otherwise oral argument is ordered.

The reasons assigned by appellant to justify a rehearing are meritless, and are dismissed as such. The Petition for Rehearing is denied, and no member of this panel nor judge in regular active service on the Court having requested that the Court be polled on rehearing en banc (Rule 35, Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12), the Petition for Rehearing En Banc is denied.