**Glen K. DORSEY, Jr., et al., Plaintiffs,**

**Honda Motor Company, Ltd.,
Defendant-Appellant,**

v.

**CONTINENTAL CASUALTY
COMPANY,
Defendant-Appellee.**

**No. 83–3067.**

United States Court of Appeals,
Eleventh Circuit.

April 23, 1984.

John L. O'Donnell, Jr., Thomas B. De-Wolf, Orlando, Fla., Anthony M. Lanzone, New York City, for defendant-appellant.

John E. Fisher, Orlando, Fla., for defendant-appellee.

Before FAY and HENDERSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

ALBERT J. HENDERSON, Circuit Judge:

Honda Motor Company, Ltd. ("Honda") appeals an adverse decision of the United States District Court for the Middle District of Florida refusing to assess punitive damages against Continental Casualty Company ("Continental"). This determination was made in response to a remand from the former Fifth Circuit Court of Appeals in *Dorsey v. Honda Motor Company, Ltd.*, 655 F.2d 650 (5th Cir.1981), *mod. and reh. den.*, 670 F.2d 21 (5th Cir. 1982), *reh. en banc den.*, 673 F.2d 911, *cert. den.*, 459 U.S. 880, 103 S.Ct. 177, 74 L.Ed.2d 145 (1982). In the district court, Honda maintained that a $5,000,000.00 jury verdict for punitive damages had been levied against it for the misconduct of a separate entity, Honda Research & Development Co., Ltd. ("Honda R & D"), and not because of its own acts. Honda contended that under Florida law its insurer, Continental, was responsible for the payment of these punitive damages under a theory of vicarious liability and thereby sought to invoke an exception to Florida's general rule precluding insurance coverage for punitive damages. The district court found instead that the award of punitive damages was the result of Honda's own misconduct, as opposed to that of Honda R & D, negating the issue of vicarious liability. Accordingly, the district court found that Continental was not obligated to pay for the punitive damages awarded against Honda. We affirm.

The facts pertinent to this appeal are set out generally at 655 F.2d 650. Because of the protracted nature of this litigation, we refer here only to the evidence and events which essentially bear on the issue now before us.

This controversy arises out of a diversity action for damages resulting from an automobile intersection collision on March 9, 1972. As amended, the complaint claimed damages for personal injury to Glen K. Dorsey, Jr. and for loss of consortium by his wife Barbara Dorsey. The amended complaint alleged theories of negligence, breach of express and implied warranty, and strict liability in tort. The suit was directed against Honda and American Honda Motor Company, Inc. ("American Honda"), the manufacturer and the American distributor, respectively, of the vehicle owned and operated by Glen K. Dorsey, Jr. Continental Insurance Company was also named as a defendant.

A pre-trial stipulation entered into among the Dorseys, Honda, American Honda and Continental, and approved by the district court on December 4, 1978, recited:

Honda Motor Company, Ltd., as the manufacturer is liable for any negligence (sic) breach of warranty with respect to any component part which is defectively designed and manufactured even though such part may have been obtained by a third-party supplier.

With leave of the district court, the plaintiffs, on March 28, 1979, filed an "Amendment to the Third Amended Complaint" containing a count for punitive damages against Honda and American Honda.[1] The claim for punitive damages alleged that the defendants had received actual notice two years before the manufacture of Dorsey's vehicle that the passenger compartment was defectively designed, subjecting occupants to the danger of severe personal injury in the event of minimum speed collisions. It was further alleged that despite actual knowledge of the design defect Honda failed to take any steps to correct the defect or to warn the plaintiffs of the dangerous propensities of the vehicle.

The trial of the action was commenced on June 15, 1979. On June 29, 1979, the jury returned a verdict against Honda and American Honda for $825,000.00 compensatory damages. In addition, the jury awarded punitive damages of $5,000,000.00 solely against Honda.

By special verdict, the jury found (1) that the automobile was defective; (2) that Honda failed to use reasonable care in the design or manufacture of the automobile; (3) that both Honda and American Honda failed to warn of a latent defect; and (4) that Honda acted with wantonness, willfulness or reckless indifference to the rights of others in the manufacture and distribution of the vehicle.

On November 2, 1979, following a hearing on various post-trial motions, the district court set aside the punitive damages award. To avoid piecemeal appellate review, the district court also ruled, in response to a motion filed by Continental, that Continental was not liable for the punitive damages under the circumstances of this case.

The Dorseys appealed from that portion of the order setting aside the punitive damages. Honda cross-appealed the ruling that Continental was not indebted for the punitive damages. The appeal and cross-appeal proceeded concurrently.

In *Dorsey v. Honda Motor Company, Ltd.*, 655 F.2d 650 (5th Cir.1981), the former Fifth Circuit Court of Appeals reversed and reinstated the punitive damages originally assessed against Honda. The court also reversed the finding of no insurance coverage for the punitive damages, and remanded the case to the district court for a new determination of Continental's liability to Honda for punitive damages.

Both Honda and Continental petitioned for rehearing citing a new opinion of the Supreme Court of Florida which they claimed reflected a change in Florida law relating to punitive damages. Thereafter, the appeals court modified its prior opinion, 670 F.2d 21. It deleted a substantial por-

---

1. Footnote 3 of the original opinion, 655 F.2d at 652, states that the plaintiffs did not seek damages against American Honda. This is apparently an error since the amendment referred to here was directed against both Honda and American Honda. At any rate, punitive damages were ultimately awarded only against Honda.

tion, including that part dealing with the sufficiency of evidence of Honda's liability for punitive damages vis-a-vis that of Honda R & D, and remanded the case to the district court to "determine afresh" whether, under Florida law, Continental was liable to Honda.

Following remand, it was stipulated between Honda and Continental that there was no necessity for an additional evidentiary hearing. The district court examined the entire record, including the transcript of evidence, and entered an order granting Continental's motion to limit its liability solely to compensatory damages. The memorandum decision stated that the case was not one of vicarious liability because "this court can reach no conclusion except that the fault which gave rise to the punitive damages was that of Honda and not that of Honda R & D.".

Honda assigns as error (1) that the district court departed from the law of the case in determining that Honda's liability for punitive damages was not vicarious; (2) that the district court erred in finding that the fault which gave rise to the punitive damages was that of Honda; and (3) that the district court erred in limiting the liability of Continental to compensatory damages.

### I.

■ The "law of the case" doctrine invokes the rule that findings of fact and conclusions of law by an appellate court are generally binding in all subsequent proceedings in the same case in the trial court or on a later appeal. *United States v. Robinson*, 690 F.2d 869, 872 (11th Cir. 1982).[2] Honda claims that the court of appeals made a determination in its initial opinion that the jury's award of punitive damages was predicated on the conduct of employees of Honda R & D and that the district court was bound by that finding.

■ The law of the case does *not* apply to a finding that is later vacated. *Johnson v. Board of Education of the City of Chicago*, 457 U.S. 52, 102 S.Ct. 2223, 72 L.Ed.2d 668 (1982). Where a judgment is vacated for a new determination, findings previously made that are integral to that judgment are likewise vacated and are thus not subject to the law of the case doctrine. *Id.*

■ In its first opinion, the prior panel held that the liability of Honda was not the product of its own conduct, but arose out of the acts of Honda R & D. 655 F.2d 650, 660. It also suggested that there was no substantial evidence that any responsible person employed by Honda acted in a reckless manner or that any such person had knowledge of the test results or recommendations of Honda R & D. *Id.* However, in its opinion on rehearing, 670 F.2d 21, the court specifically deleted that portion of the first decision containing those statements. The court in effect directed the district court to redetermine the vicarious liability issue and its impact on insurance coverage relating to punitive damages.

In urging that the "law of the case" principle is viable here, Honda emphasizes two sentences from the original opinion that were not vacated by the second opinion. The original appellate decision stated:

> In considering the sufficiency of the evidence to support the jury finding of willful, wanton or reckless conduct, it is of no moment that the substantial evidence of such conduct relates to employees of Honda R & D.

655 F.2d 650, 653. It also noted:

> By the pre-trial order, Honda, knowing that design and testing of the car had been done by Honda R & D, accepted responsibility for the acts of Honda R & D in design and testing. Thus, in assay-

---

**2.** There are exceptions to this principle where: (1) substantially different evidence is produced at a subsequent trial; (2) controlling authority compels a contrary decision of law applicable to the issue; or (3) the prior decision was clearly erroneous and would work manifest injustice.

*EEOC v. International Longshoremen's Ass'n.,* 623 F.2d 1054, 1058 (5th Cir.1980), *cert. denied* 451 U.S. 917, 101 S.Ct. 1997, 68 L.Ed.2d 310 (1981). None of these exceptions is material here.

ing the evidence of wrongful conduct the acts of Honda R & D are treated as the acts of Honda.

*Id.* at 654.

Honda argues that these excerpts constitute a determination by the court of appeals that the jury's award of punitive damages was based on the conduct of employees of Honda R & D and, therefore, settle the issue of vicarious liability.

We do not believe that these statements stand for the proposition advanced by Honda. The two opinions must be read in their entirety. Viewed in context, the statements do not support Honda's interpretation.

First, the opinions reveal that the court of appeals directed the district court to reconsider the issue of vicarious liability as well as the question of insurance coverage for punitive damages. This is apparent from the decision of the court on rehearing to delete portions of the first opinion pertaining to evidence of the conduct of the employees of Honda R & D, and to change its mandate from reversal to a vacation of the judgment.

Second, the quoted portions of the original opinion refer not so much to evidentiary questions concerning the conduct of Honda R & D as to the fact that the verdict could be sustained regardless of whether the evidence proves negligence by Honda's employees or fault on the part of the employees of Honda R & D. This reflects the fact that the case was tried on the theory of Honda's liability for its own acts.

The two isolated statements cited by Honda cannot be construed as the law of the case. The district court correctly followed the mandate of the court of appeals in making a new determination of vicarious liability.

## II.

Our attention is next directed to the finding of the district court that the jury's award of punitive damages was the result of Honda's misconduct and not that of Honda R & D. After remand, the district court found:

> There is no basis in the record on which this court can find that Honda (R & D) was guilty of wilful and wanton misconduct.
>
> *       *       *       *       *       *
>
> On the basis of the record then, this court can reach no conclusion except that the fault of which gave rise to punitive damages was that of Honda and not that of Honda R & D.

Honda insists that none of the factors relied upon by the district court to sustain its conclusion is supported by the record.

■ On appeal, a finding of fact by a trial judge is reviewed under the "clearly erroneous" standard. In applying this standard, we consider not whether we would reach a different conclusion from the evidence, "but whether there is sufficient evidence in the record to [reflect] clear error in the trial judge's findings." *Crist v. Crist,* 632 F.2d 1226, 1229 (5th Cir.1980), *cert. denied,* 451 U.S. 986, 101 S.Ct. 2321, 68 L.Ed.2d 844 (1981).[3] This "clearly erroneous" criterion applies not only to findings of fact but also to inferences drawn from the evidence. *United States v. Florida,* 482 F.2d 205 (5th Cir. 1973). We may not set aside the findings of a district court unless, on the entire evidence and the record, we are left with a definite and firm conviction that a mistake has been committed. *United States of America v. United States Gypsum Company,* 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948); *George W.B. Bryson & Company v. Norton Lilly and Company,* 502 F.2d 1045 (5th Cir.1974).

■ The district court based its finding and conclusion that Honda itself acted with "wantonness, willfullness or reckless indifference to the rights of others" on (1) the fact there was no issue before the jury

---

**3.** In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (*en banc*), the Eleventh Circuit Court of Appeals adopted as precedent the deci-sions of the former Fifth Circuit issued before October 1, 1981.

addressing the conduct of Honda R & D; (2) the absence of any mention of Honda R & D in the pre-trial stipulation; (3) the parties' stipulation that Honda was the manufacturer of the vehicle; (4) the assumption that, as manufacturer of the vehicle, Honda knew of its design and crash characteristics; (5) the evidence that Honda had knowledge of a recommendation to change the design; (6) the existence of independent Honda test facilities used to conduct compliance tests on production model cars; and (7) Honda's position as the only entity able to provide an appropriate warning to the customer of the vehicle's crashworthiness. Honda contends that the factors cited by the district court either lack relevance to the issue of punitive damages or are unsupported by record evidence. The facts found and inferences made by the district court in reaching its conclusion are amply supported by the record. Consequently, there was no clear error in the court's ultimate determination.[4]

The first two factors noted by the district court—that no issue was submitted to the jury which addressed the conduct of Honda R & D and that the pre-trial stipulation made no reference to the conduct of Honda R & D—merely reflect the posture of the case as outlined in the pleadings and the pre-trial stipulations of the parties. First, all of the allegations of liability were against Honda. Honda R & D was not a party to the lawsuit. Second, by pre-trial stipulation, Honda accepted responsibility for the design and testing of its automobiles. Finally, the instructions to the jury did not pertain to the vicarious liability of Honda but only to Honda's directly actionable misconduct. Hence, the jury never considered whether Honda R & D itself might be liable for failure to use reasonable care in the design and testing of the vehicle or to provide an appropriate warning of the vehicle's crashworthiness. Rather, the jury's inquiry was only concerned with the

charges of active negligence against Honda itself, including not only the allegations of defective design but also the duty to know of test results and to warn of dangers. In sum, the strategic decisions adopted by the parties to the litigation—approaches apparently inspired by considerations with little, if any, bearing on the issue before us—left the jury in a position to direct its attention to the liability of Honda alone.

The other factors cited by the district court are grounded in the evidence. We agree with the district court that the jury could have drawn reasonable inferences from the evidence that Honda had knowledge of the dangerous propensities of the AN600, the automobile involved in the collision, and that despite this knowledge it neither remedied the defects nor issued any warnings to the consuming public. Thus, the evidence confirms the premise of the district court that the punitive damages stemmed from consideration only of the conduct of Honda and not that of any other entity.

The first inference—that Honda had knowledge of the dangerous propensities of the AN600—is supported by evidence that Honda was concerned with the crashworthiness of the vehicles it manufactured and possessed the necessary expertise to thoroughly scrutinize any designs submitted by Honda R & D. At the trial, the plaintiffs introduced a technical paper prepared by Hideo Siguira, a high-ranking officer of Honda, for presentation on behalf of his company to a conference in May, 1972. (T.T. Vol. I, pp. 234–36; Pl.Ex. 33). This paper contained design details and descriptions of safety components on experimental vehicles manufactured by Honda, and demonstrated Honda's state-of-the-art knowledge regarding the manufacture of crashworthy vehicles. Moreover, there was testimony that Honda regularly acquired information on the crashworthiness of its vehicles both from its own research and

---

**4.** The panel opinion on rehearing observed that, "In the record it is often hard to tell which one of the family of Honda companies was being described, and (at trial) no one treated such distinction as a matter of particular conse-

quence." 670 F.2d 21, 22. In reaching our conclusions as to the probative value of the evidence, we have credited only that testimony clearly referring to one corporate entity as opposed to the other.

from data supplied by Honda R & D. Shingetoshi Komatsu, an employee of Honda R & D, testified that Honda had test facilities independent of those of Honda R & D, and that it used those facilities to conduct its own vehicle tests. (T.T. Vol. IV, pp. 331–32). He also stated that Honda and Honda R & D shared test data. (*Id.*) In addition, two test reports introduced by the plaintiffs (Pl.Ex. 26 & 27) refer to tests that were performed by Honda personnel at Honda's factory. Kujoshi Mori, who worked for Honda R & D and was involved in the design and testing of Honda cars (T.T. Vol. I, pp. 170–71), recalled that recommendations were made to Honda concerning results of the Honda R & D testing program. (T.T. Vol. I, p. 224; T.T. Vol. IV, p. 599).[5] (Def.Exh. 26; T.T. Vol. IV, pp. 343, 360–62). From this and other evidence it was reasonable for the jury to assume that Honda had actual knowledge of any dangerous propensities inherent in its vehicles.

The final consideration—that Honda was the only entity in a position to provide an appropriate warning of the vehicle's crashworthiness—reflects the fact that the jury was confronted only with Honda's directly actionable misconduct. The jury found in its special verdict that Honda was negligent in failing to warn the plaintiffs of a latent danger inherent in the AN600. To reach this conclusion, the jury would necessarily have had to find that Honda had knowledge of the dangerous propensities of the AN600.[6]

Taken as a whole, then, the evidence is more than sufficient to sustain the finding of the district court that the jury assessed punitive damages against Honda on the basis of Honda's own independent acts and not those of Honda R & D.

### III.

Honda's third assignment of error must fail in light of our affirmance of the district court's factual finding that Honda was directly liable for wilful and wanton misconduct notwithstanding the involvement of Honda R & D. Since we concur with the district court judgment that there is no issue of vicarious liability, there is no need to address the exception to the general Florida rule that there can be no insurance coverage for punitive damages.

*Northwestern Casualty Co. v. McNulty,* 307 F.2d 432 (5th Cir.1962), is the controlling case in Florida respecting non-vicarious liability. *McNulty* stands for the proposition that liability for punitive damages cannot be passed on to an insurer. The purpose behind this policy is to penalize the wrongdoer and not his insurance company. *See also, United States Concrete Pipe Co. v. Bould,* 437 So.2d 1061, 1064 (Fla.1983).

Having agreed with the district court that the jury was not presented with a case of vicarious liability and that the jury found Honda liable because of its own independent acts and not those of Honda R & D, we hold that the district court correctly applied the *McNulty* rule in concluding

---

5. The district court found reason to believe that Honda specifically received Honda R & D's recommendation embodied in Plaintiff's Exhibit 31. Apparently, the court relied on the testimony of Kiyoshi Mori in reaching this conclusion. Our reading of Mori's testimony leads us to believe that Honda received recommendations concerning results of the Honda R & D testing program. However, largely owing to certain ambiguities resulting from the difficulties of foreign language translation, we cannot draw from Mori's testimony alone the specific inference that Honda possessed the information contained in Plaintiff's Exhibit 31. Our determination must rest on an inference drawn from the relationship between Honda and Honda R & D taken as a whole.

6. Honda notes that this special verdict was originally directed not only against Honda, but also against America Honda, the American distributor of the AN600, and that the district court directed a verdict for American Honda on the punitive damage claim. It reasons that this directed verdict represents an acknowledgment by the district court that the evidence in support of this finding was not sufficient to support an award of punitive damages against either American Honda or Honda itself. We disagree. The district court left intact the verdict against Honda, thereby indicating its ratification of that finding.

that Continental is not responsible for the punitive damages assessed against Honda.

The judgment of the district court is AFFIRMED.