UNITED STATES of America,
Plaintiff–Appellee,

State of Florida Department of Environmental Regulation, Plaintiff–Intervenor, Appellee,

v.

M.C.C. OF FLORIDA, INC., and Michael's Construction Co., Defendants–Appellants.

No. 91–5358.

United States Court of Appeals, Eleventh Circuit.

Aug. 11, 1992.

Thomas A. Harris, Chattanooga, Tenn., for defendants-appellants.

Susan Hill Ponzoli, Asst. U.S. Atty., Miami, Fla., Jack Chisolm, Florida Dept. of Environmental Regulation, Tallahassee, Fla., Linda Collins–Hertz, Asst. U.S. Atty., Miami, Fla., William A. Baxter, Atty., U.S. Army Corps of Engineers, (Sp. Asst. to U.S. Atty., S.D.Fla.), Jacksonville, Fla., for plaintiff-appellee.

Before TJOFLAT, Chief Judge, BIRCH, Circuit Judge, and RONEY, Senior Circuit Judge.

RONEY, Senior Circuit Judge:

The facts pertinent to this appeal are set out generally at *United States v. M.C.C. of Florida, Inc.,* 772 F.2d 1501 (11th Cir.1985) (*M.C.C. I*). We refer here only to the events which essentially bear on the issues now before us.

This controversy arises out of a civil action brought by the United States of America and the Florida Department of Environmental Regulation for injunctive relief to prohibit dredging activities by M.C.C. of Florida, Inc. and Michael Construction Company (hereafter collectively referred to as M.C.C.) for restoration of the

areas dredged by M.C.C. and for civil penalties. The case was tried without a jury over the objection of M.C.C. The district court found that M.C.C. had violated the Rivers and Harbors Act, 33 U.S.C. § 403, *et seq.*, the Clean Water Act, 33 U.S.C. § 1251, *et seq.*, and various state statutes. The court ordered M.C.C. to pay a $20,000 civil penalty under the Clean Water Act and a $200,000 equitable judgment under the Rivers and Harbors Act for use in restoration projects. *United States v. M.C.C. of Florida, Inc.*, 81–2373–CIV (S.D.Fla. March 12, 1984).

On appeal to this court, M.C.C. argued that it had a right to a jury trial, and that its conduct was not prohibited by the Rivers and Harbors Act or by the Clean Water Act. This court held that M.C.C. had no right to a jury trial, that its conduct violated federal law, and that, while an equitable remedy such as that ordered by the district court was appropriate, M.C.C. should have been required to prepare and submit for court approval a proposed environmental plan for implementation of the remedy. *M.C.C. I*, 772 F.2d at 1504–07.

M.C.C. then petitioned the United States Supreme Court for a writ of certiorari. The writ was granted and the Supreme Court issued a mandate vacating this court's judgment in *M.C.C. I*, directing this court to reconsider its opinion in light of *Tull v. United States*, 481 U.S. 412, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987). *M.C.C. of Florida, Inc. v. United States*, 481 U.S. 1034, 107 S.Ct. 1968, 95 L.Ed.2d 809 (1987). In *Tull*, the Supreme Court held that a defendant is entitled to a jury trial for the determination of its liability for civil penalties under the Clean Water Act. On remand, this court interpreted the Supreme Court's mandate to affect only that part of the *M.C.C. I* opinion entitled "Jury Trial," and found the remaining portions of the prior opinion to be the "law of the case." *United States v. M.C.C. of Florida, Inc.*, 848 F.2d 1133, 1134 (11th Cir.1988) (*M.C.C. II*). The panel thus remanded to the district court for a jury trial on the issue of

liability only and stated: "If the jury returns a verdict for the United States, the district court will be guided by that part of our opinion captioned 'Remedy.'" *Id.*

M.C.C. petitioned for rehearing, contending that this court had misinterpreted the *Tull* decision and that M.C.C. was entitled to a retrial on *all* issues presented by the case. In an opinion denying M.C.C.'s petition, the panel held that M.C.C. was not entitled to retrial on all issues, and further noted that no jury trial would be necessary if the Government were to abandon its claim for civil penalties and simply accept the equitable restitution of $200,000. *United States v. M.C.C. of Florida, Inc.*, 863 F.2d 802, 803–04 (11th Cir.1989) (*M.C.C. III*).

Following remand to the district court, the Government waived its claim for civil penalties. The district court approved the waiver and entered an order dismissing the Government's claim for civil penalties, and requiring M.C.C. to prepare and submit an environmental plan for implementation of the remedy. *United States v. M.C.C. of Florida, Inc.*, 81–2373–CIV (S.D.Fla. Feb. 12, 1991). This appeal followed.

■ M.C.C. argues on this appeal that the Supreme Court's order vacating *M.C.C. I* set aside all prior proceedings and entitled M.C.C. to a retrial on all issues. We disagree.

The order of the Supreme Court stated as follows:

Certiorari granted, judgment vacated, and case remanded for further consideration in light of *Tull v. United States*, [481 U.S. 412, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987)].

*M.C.C. of Florida, Inc. v. United States*, 481 U.S. 1034, 107 S.Ct. 1968, 95 L.Ed.2d 809 (1987).

■ M.C.C. is correct in asserting that a general vacation by an appellate court of the lower court's judgment vacates the entire judgment below, divesting the lower court's earlier judgment of its binding ef-

fect. *Johnson v. Board of Educ.,* 457 U.S. 52, 102 S.Ct. 2223, 72 L.Ed.2d 668 (1982); *Dorsey v. Continental Casualty Co.,* 730 F.2d 675 (11th Cir.1984). A vacation which merely requires further consideration in light of a new Supreme Court decision, however, is of a much more limited nature. The effect of a vacation such as the one at issue was not to nullify all prior proceedings. On the contrary, it merely required the court to reconsider its opinion in *M.C.C. I* in light of the law set forth in *Tull.* The Supreme Court did not take a position on whether *Tull* actually affected the outcome of *M.C.C. I,* but was instructing this court to make that determination. Thus, although the panel was not bound by its prior decision, it was free to adopt any or all of *M.C.C. I* that, upon reconsideration, it determined to be unaffected by *Tull. See, e.g., Jones v. American Broadcasting Co.,* 961 F.2d 1546 (11th Cir.1992). *Cf. Moore v. Zant,* 885 F.2d 1497, 1502–03 (11th Cir. 1989) (plurality opinion of en banc court) (consideration of issues beyond Supreme Court's specific mandate is "permitted by" the remand order), *cert. denied,* —— U.S. ——, 110 S.Ct. 3255, 111 L.Ed.2d 765 (1990).

This is precisely what the court did in *M.C.C. II* and *III.* After concluding that the jury trial right recognized in *Tull* applied only to the issue of liability for civil penalties under the Clean Water Act, the court reaffirmed the rest of the district court's opinion, and issued directions to the district court for its treatment of the remedy issue:

> We interpret the Supreme Court's remand to affect only that portion of our prior opinion captioned "Jury Trial," 772 F.2d at 1506–07. Thus, the remaining portions of our opinion are the law of the case. We remand to the district court for a jury trial on the issue of liability. If the jury returns a verdict for the United States, the district court will be guided by that part of our opinion captioned "Remedy," 772 F.2d at 1507–08.

*M.C.C. II,* 848 F.2d at 1134.

Upon M.C.C.'s petition for rehearing, the court further noted that

on remand the government could dismiss its claim for the $20,000 fine assessed by the district court under the Clean Water Act and accept the equitable remedy of $200,000 under the Rivers and Harbors Act.... Thus if the government waives the $20,000 civil penalty, it being the civil penalty which entitles M.C.C. to a jury trial, then this case is taken outside the ambit of *Tull.* Any waiver by the government is subject to the approval of the district court.

*M.C.C. III,* 863 F.2d at 803–04.

The statement in *M.C.C. II* that the remaining portions of *M.C.C. I* were the "law of the case" may not have been technically correct in light of the Supreme Court's vacation of *M.C.C. I.* It is clear, however, that the court did not feel bound by its earlier decision. Instead, the panel simply believed that the Supreme Court's holding in *Tull* had no bearing on any portion of *M.C.C. I* beyond its treatment of the jury trial issue. Thus, the effect of the court's statement in *M.C.C. II* essentially was to reinstate by reference those portions of *M.C.C. I* that were considered to be unaffected by *Tull,* and from which the court saw no reason to depart.

█ Upon remand, the district court's authority was limited by the scope of the mandate issued by this court. We have previously held that

> [a] district court when acting under an appellate court's mandate, "cannot vary it, or examine it for any other purpose than execution; or give any other or further relief; or review it, even for apparent error, upon a matter decided on appeal; or intermeddle with it, further than to settle so much as has been remanded." *In re Sanford Fork & Tool Co.,* 160 U.S. 247, 255, 16 S.Ct. 291, 293, 40 L.Ed. 414 (1895)

*Litman v. Massachusetts Mutual Life Ins. Co.,* 825 F.2d 1506, 1510–11 (11th Cir.1987) (en banc). Upon remand, therefore, the trial court was required to comply with the mandate and statement of the law as con-

tained in *M.C.C. II* and *M.C.C. III.* Accordingly, the district court ordered M.C.C. to submit an environmental plan as required by *M.C.C. II,* and dismissed the Government's claim for civil penalties under the Clean Water Act as suggested by *M.C.C. III.* The district court clearly has complied with this court's mandate.

In sum, M.C.C. is not entitled to a new trial. The Supreme Court's vacation of *M.C.C. I* did not entitle M.C.C. to retrial on all issues. Further, the district court decision from which M.C.C. appeals was in full compliance with the mandate issued by *M.C.C. II* and *M.C.C. III* upon remand.

Both of the other assertions presented by M.C.C. are without merit. First, we reject M.C.C.'s contention that the United States lacks standing to seek relief in this matter. *See Zabel v. Tabb,* 430 F.2d 199 (5th Cir.1970), *cert. denied,* 401 U.S. 910, 91 S.Ct. 873, 27 L.Ed.2d 808 (1971). Second, M.C.C. argues once again that the navigational servitude doctrine insulates M.C.C.'s activities from the dictates of both the Rivers and Harbors Act and the Clean Water Act. In *M.C.C. I,* this court rejected that argument and affirmed the district court's conclusion that M.C.C.'s activities were covered by both the Clean Water Act and the Rivers and Harbors Act. In *M.C.C. II,* the court adopted that portion of *M.C.C. I,* finding that it was not affected by the *Tull* decision. Because this issue has been previously ruled upon by a prior panel, we cannot consider it anew.

AFFIRMED.