**Walter F. BIGGINS**

v.

**THE HAZEN PAPER CO., et al.**

**Civ. A. No. 88–0025–MAP.**

United States District Court, D. Massachusetts.

Sept. 18, 1995.

Maurice M. Cahillane, Jr., John J. Egan, Egan, Flanagan & Cohen, P.C., Springfield, MA, for Walter F. Biggins.

Robert B. Gordon, John H. Mason, Ropes & Gray, Boston, MA, Philip J. Callan, Jr., Robert L. Leonard, Doherty, Wallace, Pillsbury & Murphy, Springfield, MA, for The Hazen Paper Co., Robert Hazen, Thomas Hazen.

## MEMORANDUM REGARDING CROSS–MOTIONS FOR SUMMARY JUDGMENT

(Docket Nos. 168 & 174)

PONSOR, District Judge.

This case has now found its way back to this district court after a journey through the First Circuit Court of Appeals, the Supreme Court, and the First Circuit again. The case arrives for trial on the plaintiff's claim, under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq.* ("ADEA"), that he was discharged by the defendants as a result of their discriminatory animus against him based upon his age. Both the defendants and the plaintiff filed motions for summary judgment, which were referred to Magistrate Judge Neiman for Report and Recommendation. In a lengthy and well considered memorandum, Judge Neiman recommended that both motions be denied. For the reasons set forth below, the court will adopt this recommendation in its entirety.

The lengthy procedural background of this case is well summarized in the Report and Recommendation and need not be detailed here. It is sufficient to note that the core issue remaining is whether the plaintiff was terminated by the defendants because of his age. Defendants have filed a motion for summary judgment contending that, on the extensive record in this case, no reasonable jury could so conclude. Rather, defendants argue, the undisputed facts plainly demonstrate that the plaintiff was discharged because he refused to sign a garden-variety confidentiality agreement protecting his employer. Citing *Hazel v. U.S. Postmaster General,* 7 F.3d 1 (1st Cir.1993), defendants vigorously contend that the refusal of an employee to accede to routine employer demands, with the result that he is terminated, cannot form the basis for a claim of employment discrimination. The intensity of defendants' argument has caused the court to step back and look more closely at the case and the authorities. Having done so, the court must however conclude that defendants' motion must be denied for the following reasons.

First, the defendants' focus is too narrow. The issue for the jury will go beyond simply the reasonableness of the terms of the confidentiality agreement. Plaintiff contends that the demand to sign the confidentiality agreement was but one facet in a concerted effort by the defendants to get rid of the plaintiff

because of his age. Certain remarks of the defendants, while not dispositive in themselves, tend to show if believed that they had a predisposition against older employees. It is significant that the plaintiff was the first employee ever asked to sign a confidentiality agreement. It is significant, moreover, that the plaintiff, when terminated, was replaced by a person under 40 years of age and that the confidentiality agreement presented to this employee contained terms less onerous than those contained in the agreement presented to the plaintiff. Most significantly, a jury could conclude that defendants' insistence that plaintiff sign the confidentiality agreement, without acknowledging in writing the reasonable demands for compensation being made by the plaintiff, were part of an effort to maneuver the plaintiff into a position where he would have no choice but to quit or be terminated.

It is certainly true that the defendants have a very strong argument that age had absolutely nothing to do with plaintiff's termination. But these arguments must await jury consideration.

The *Hazel* case, upon which defendants so strongly rely, does not possess nearly the force defendants suggest. In that case, Judge Keeton made factual determinations during a bench trial that were subsequently found by two of the three judges who heard the appeal to be "plausible." Nothing in the case suggests that Judge Keeton's factual findings were *mandated* by the evidence in the case. While it is true in this case that the defendants' position could be called plausible, it is also true that the plaintiff's is plausible as well. Moreover, the *Hazel* case apparently lacked "smoking gun" evidence such as remarks by the supervisor tending to show direct discriminatory animus. It is also doubtful that the refusal to accept a transfer could be equated to the demands being made on plaintiff here. Hazel could accept the

transfer without endangering any right of his own; Biggins' execution of the confidentiality agreement, he might reasonably feel, would be fatal to his claims for enhanced compensation. Knowing this, the defendants' insistence that he sign the confidentiality agreement without any acknowledgment of his financial claims may well be seen by the jury as a clever ploy used by the defendants to force out an unwanted, older employee.

To repeat, these arguments may ultimately not be entertained by a jury. Plaintiff, however, has a right to present them.[1]

Turning to the plaintiff's cross-motion for summary judgment, the court cannot say as a matter of law at this point that the defendants are barred from offering evidence of a legitimate justification for their decision to terminate the plaintiff. The issue may be raised again via motions *in limine*, but it does not appear at this juncture that the legal effect of the prior proceedings in the case handicap the defendants as severely as plaintiff suggests.

For the foregoing reasons, the Magistrate Judge's Report and Recommendation is hereby adopted in its entirety and the motions for summary judgment are hereby denied.

A separate scheduling order will issue to govern further proceedings in this case.

### *REPORT AND RECOMMENDATION OF COURT ON PLAINTIFF'S AND DEFENDANTS' CROSS MOTIONS FOR SUMMARY JUDGMENT*

(Docket Nos. 168 and 174)

July 20, 1995

NEIMAN, United States Magistrate Judge.

### I. INTRODUCTION

Counsel for both parties appeared before the Court with regard to Defendant Hazen

---

1. In reaching this decision, the court has carefully reviewed the recent Supreme Judicial Court decision of *GTE Products Corp. v. Jefferson Davis Stewart*, 421 Mass. 22, 653 N.E.2d 161 (1995). This case is distinguishable for at least two reasons. First, despite defendants' arguments, it is doubtful whether this case, where plaintiff did not quit but was terminated, can be construed as involving a "constructive" discharge at all. Second, even assuming the court agrees with the

defendants' characterization, a jury could well find that plaintiff's refusal to sign the confidentiality agreement without acknowledgement of his reasonable financial claims was vastly more justified than the plaintiff Stewart's decision simply to quit employment after "a single distressing interview" with a supervisor. *Id.* 653 N.E.2d at 169. The *GTE Products* case presents an entirely different factual scenario.

Paper Company, Robert Hazen and Thomas Hazen's motion for summary judgment concerning Plaintiff's age discrimination claim (Docket No. 168), filed on February 21, 1995, and Plaintiff Walter F. Biggins' cross motion for summary judgment (Docket No. 174), filed on March 9, 1995. The pending action involves Plaintiff's claim that Defendants violated his rights under the Age Discrimination In Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"). Plaintiff alleges that the violation occurred when Defendants discharged him from employment when he refused to sign a confidentiality and non-competition agreement. Pursuant to Rule 3 of the Rules of United States Magistrates in the United States District Court for the District of Massachusetts, Plaintiff's and Defendants' motions have been referred for a report and recommendation. 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, the Court recommends denying both motions for summary judgment.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

Defendant Hazen Paper Company is a small, privately-held company in Holyoke, Massachusetts, that Defendants Thomas Hazen and Robert Hazen own. The Hazens are the company's treasurer and president, respectively. The company is engaged in the business of manufacturing paper and paperboard that is coated, foil-laminated or printed. The paper is used in such products as cosmetic wrap and pressure-sensitive materials.

Hazen Paper Company hired Walter F. Biggins as its Technical Director in 1977. Mr. Biggins was fifty-two years of age at that time. As the Technical Director, Mr. Biggins' job duties included working with Hazen Paper's sales employees, developing new products with customers and vendors, improving existing production methods and processes, and maintaining company compli-

ance with state and federal pollution control requirements. In July of 1984, Mr. Biggins asked Thomas Hazen to increase his annual salary from $44,000 to a minimum of $100,000 per year. Mr. Biggins wanted the salary increase in recognition of his contributions to the development of a new coating for foil paper that had resulted in high sales for the company. Thomas Hazen responded that the company could not give him an increase in cash, but instead would give him corporate stock of sufficient value to raise his salary to $100,000 yearly. However, the company never gave Mr. Biggins the promised stock.

In 1983, Mr. Biggins helped his son, Timothy Biggins, establish a business to clean dirty solvents generated by printing companies and automobile shops. During the summer of 1985, Mr. Biggins started a new consulting business with his son to advise companies on compliance with Massachusetts state and federal environmental laws. Mr. Biggins disclosed both of these ventures to Thomas Hazen, but claimed they were going to be his son's businesses and not his own. Thomas Hazen specifically directed Mr. Biggins that these outside ventures not do business with Hazen Paper Company's competitors.

In a May 24, 1986 meeting, the Hazens told Mr. Biggins that they had evidence that he was marketing the services of his outside companies to their competitors and that it had to stop. The Hazens told Mr. Biggins that if he wished to remain in their employ, he would have to sign an agreement stipulating that he would not continue any such activities. He would also have to agree to keep confidential all information he learned or developed during his employment with Hazen Paper Company. The Hazens provided Mr. Biggins with a proposed Employee Confidential/Patent Agreement on May 30, 1986, which had been prepared with the assistance of the Hazens' attorneys. The proposed agreement contained six restrictions, the specifics of which are set forth in the margin.[1]

---

**1.** The proposed agreement contained the following restrictions:

(1) Biggins would report all discoveries and inventions made by Biggins during the course and within the scope of his employment at Hazen

Paper, whereupon such discoveries and inventions would become the exclusive property of the company;

(2) Biggins would covenant to protect all company trade secrets and confidential information,

Mr. Biggins consulted with his attorney and met with Thomas Hazen on June 10, 1986 to discuss the proposed agreement. Mr. Biggins informed Thomas Hazen that he did not have a problem with the agreement as it was drafted, but that he would sign it only if it were accompanied by a companion financial agreement defining his rights to the increased salary or company stock that Biggins claimed he had been promised. Thomas Hazen responded that he would not accede to any additional agreements and that if Mr. Biggins did not sign the proposed confidentiality agreement he had been given, the parties would have to sever their relationship. After the June 10th meeting, Mr. Biggins gave no indication to the Hazens that he was willing to sign the tendered confidentiality agreement. At that point, Thomas Hazen suggested to Mr. Biggins that, rather than completely terminating his relationship, he may want to continue working for the company as an outside consultant. Mr. Biggins made no response to this offer.

On June 13, 1986, Mr. Biggins and Thomas Hazen met again, at which time Mr. Biggins reiterated that he would be willing to sign the proposed confidentiality agreement, but only if the companion financial agreement were included. Thomas Hazen replied that he would terminate Mr. Biggins' employment if he refused to sign the proposed confidentiality agreement as it currently read. Mr. Biggins again refused to sign and Thomas Hazen told him that his employment was terminated.

### B. Procedural Background

The procedural history of the current action is fairly protracted. In addition to his ADEA claim, Plaintiff claimed that the Hazens had attempted to prevent him from vesting in a company pension in violation of Section 510 of the Employee Retirement Income Security Act, 29 U.S.C. § 1140 *et seq.* ("ERISA").[2] A jury trial was held in July, 1990, which resulted in a verdict for Plaintiff on all claims. However, with respect to the ADEA violation, the trial court, pursuant to Fed.R.Civ.P. 50(b), ordered judgment notwithstanding the verdict that the ADEA violation was willful. On appeal, the Court of Appeals found that it was error for the trial court to grant Defendants' motion for judgment n.o.v. As a result, the ADEA jury verdict, together with the verdict with respect to ERISA (modified only as to amount), were both affirmed. The court based its affirmation on grounds that Defendants had acted to prevent Plaintiff from vesting in a company pension and that such action amounted to both unlawful age discrimination and an ERISA violation. *Biggins v. Hazen Paper Co.,* 953 F.2d 1405 (1st Cir.1992). Defendants filed a petition for rehearing and a suggestion for a rehearing *en banc,* which was denied.

Defendants' petition for a Writ of Certiorari was granted by the United States Supreme Court to decide, in applicable part, whether an employer's interference with the vesting of pension benefits violates the ADEA. In its decision of April 20, 1993, the Supreme Court found that "an employer does not violate the ADEA just by interfering with an older employee's pension benefits that would have vested by virtue of the employee's years of service." *Hazen Paper Co. v. Biggins,* —— U.S. ——, —— — ——, 113 S.Ct. 1701, 1707–

and not to use or disclose such information in any capacity without express, written authorization from the company;
(3) Biggins would agree to execute any documents that the company might deem necessary to protect the company's interest in its discoveries and inventions;
(4) Biggins would agree to disclose all patent applications and copyrightable material not subject to the agreement;
(5) Biggins would covenant to devote his full time and best efforts to the business of the company and agree not to take any other job, either as an employee or a consultant of another business, during the time of his employment with the company without the company's prior written permission. Permission would not be granted if the company, in its sole discretion, determined that such other employment created a conflict or potential conflict of interest with the company's present or future business; and
(6) Biggins would covenant that he would not engage in a business that competed with the company for a period of two years following the termination of his employment.

**2.** Plaintiff also made claims for fraud, wrongful discharge, violation of the Massachusetts Civil Rights Act, M.G.L. ch. 12, §§ 11 H and I, and breach of contract.

1708, 123 L.Ed.2d 338 (1993). As a result of the reliance of the Court of Appeals on pension interference as evidence of age bias, the Supreme Court vacated the judgment and remanded the case for the Court of Appeals "to reconsider whether the jury had sufficient evidence to find an ADEA violation." *Id.* at ——, 113 S.Ct. at 1708.

By the time the three-judge panel of the Court of Appeals issued its decision on remand, it also had the benefit of the Supreme Court's decision in *St. Mary's Honor Center v. Hicks,* —— U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). *St. Mary's* had been under consideration by the Supreme Court when it decided the present matter. *Biggins,* —— U.S. at ——, 113 S.Ct. at 1708. In *St. Mary's,* the Supreme Court held that a trial court's rejection of an employer's proffered reasons for an employee's termination does not necessarily compel judgment for the plaintiff-employee, for the plaintiff still bears the ultimate burden of persuasion. *St. Mary's,* —— U.S. at ——, 113 S.Ct. at 2749. In any event, the three-judge panel found on remand that, even absent the pension evidence, there was sufficient evidence to support a violation of the ADEA. *Biggins v. Hazen Paper Company,* 1993 WL 406515 (1st Cir. October 18, 1993).

Defendants filed a petition for rehearing which asked the Court of Appeals, *en banc,* to reverse the panel's holding and find the evidence *in* sufficient to support an ADEA violation. On December 7, 1993, Defendants also wrote a letter to the court, calling to its attention the case of *Hazel v. U.S. Postmaster General,* 7 F.3d 1 (1st Cir.1993), arguing that it required judgment in their favor. On March 1, 1994, the *en banc* court issued an order, pursuant to Fed.R.App.P. 35(a) and (b), that directed the parties to show cause why the ADEA count should be remanded for a new trial. The order stated, in applicable part, as follows:

> The petition for rehearing en banc suggests that we rehear this case only with respect to plaintiff's age discrimination claim. Having examined the record, the en banc court is concerned whether the likelihood that the jury took negative account of the defendants' ostensible desire

to deprive the plaintiff of a pension—a factor that the Supreme court outlawed as a *basis* for the ADEA verdict, *see Hazen Paper Co. v. Biggins,* [—— U.S. ——, ——–——] 113 S.Ct. 1701, 1705–07 [123 L.Ed.2d 338] (1993)—is sufficiently great that the interests of justice require a new trial on the age discrimination claim.

The parties filed briefs on the requested issue.

On June 27, 1994, the Court of Appeals *en banc* issued an order withdrawing the panel's opinion and remanding the ADEA count for a new trial. The court concluded that the likelihood of verdict contamination with respect to the age discrimination count was "sufficiently great that the interests of justice require a full new trial on the age discrimination claim." *Biggins v. Hazen Paper Co., En Banc* Order, No. 91–1591, 1994 WL 377800 (June 27, 1994). On the same date, the three-judge panel issued an order in accord with the *en banc* order. Plaintiff filed a petition for rehearing and a petition for a writ of mandamus, as well as a petition for a writ of certiorari, all of which were denied. Currently, Plaintiff and Defendants are separately moving for summary judgment on Plaintiff's age discrimination claim.

### III. SCOPE OF REMAND

■ The order of the Court of Appeals explicitly "require[s] a full new trial." While there is often the need to interpret an appellate court's remand order, a lower court "should confine its ensuing inquiry to matters coming within the specified scope of the remand." *Kotler v. The American Tobacco Co.,* 981 F.2d 7, 13 (1st Cir.1992) (discussing the scope of remand from the United States Supreme Court). See also *Escalera v. Coombe,* 852 F.2d 45, 47 (2nd Cir.1988) ("[a]ny reconsideration at this juncture of our earlier opinion must be limited to the scope of the Supreme Court's remand"); *Hermann v. Brownell,* 274 F.2d 842, 843 (9th Cir.1960) (the appellate court's jurisdiction "is rigidly limited to those points, and those points only, specifically consigned to our consideration by the Supreme Court"), *cert. denied,* 364 U.S. 821, 81 S.Ct. 56, 5 L.Ed.2d 50 (1960). This rule is "grounded on sound prudential consid-

erations. Repose is important in the law and, consequently, there must be an end to litigation." *Kotler*, 981 F.2d at 13.

■■■ The general rule is no less applicable when a district court is interpreting the scope of remand by an appellate court:

[A] district court when acting under an appellate court's mandate, "cannot vary it, or examine it for any other purpose than execution; or give any other or further relief; or review it, even for apparent error, upon a matter decided on appeal; or intermeddle with it, further than to settle so much as has been remanded." *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 255, 16 S.Ct. 291, 293, 40 L.Ed. 414 (1895). *Litman v. Massachusetts Mutual Life Ins. Co.*, 825 F.2d 1506, 1510–11 (11th Cir.1987) (en banc), [*cert. denied*, 484 U.S. 1006, 108 S.Ct. 700, 98 L.Ed.2d 652 (1988)].

*United States v. M.C.C. of Florida, Inc.*, 967 F.2d 1559, 1562 (11th Cir.1992). As the First Circuit Court of Appeals has indicated, the power to re-examine issues that go beyond the circumference of a remand order "is to be exercised sparingly and only when its invocation is necessary to avoid extreme injustice." *Kotler*, 981 F.2d at 13, quoting *Eubank Heights Apartments, Ltd.* 669 F.2d at 23.

In the present matter, the scope of this Court's authority upon remand is circumscribed accordingly. The Court of Appeals' remand specifically indicates that a full new trial on the age discrimination claim is required. If would have been as easy for the Court of Appeals to remand the matter to this Court in order to consider the same question posed to it by the Supreme Court: "whether the jury had sufficient evidence to find an ADEA violation." It did not. The Court of Appeals likely concluded that a new trial directed solely at the ADEA claim was the only way to adequately separate the evidence of age discrimination from pension interference, evidence which had been entwined at the original trial.

Despite the clarity of the order from the Court of Appeals requiring a new trial, however, both parties move for summary judgment on the apparent assumption that a trial is unnecessary. Defendants assert that Federal Rule of Civil Procedure 56 does not contain any time limit, nor does it preclude a motion where an appellate court has vacated a jury verdict and remanded the matter for a new trial. See C.J. Moore, Federal Practice, ¶ 56.27[3], at p. 56–870 (2d. Ed.1994) ("a general mandate to grant a new trial . . . should not preclude a motion for summary judgment, by either party, based upon the law as declared by the appellate court as applied to established facts"). In response, Plaintiff asserts that consideration of Defendants' motion for summary judgment at this time is not consistent with the mandate of the Court of Appeals. Plaintiff also asserts, however, that should this Court find that summary judgment may be considered, it should be awarded to him, not Defendants. Plaintiff maintains that summary judgment in his favor is appropriate on grounds that Defendants are precluded from presenting a legitimate non-discriminatory reason for terminating him. While the Court believes that a trial is mandated by the order of the Court of Appeals, it addresses the parties' motions for summary judgment as if consideration of them is permissible.

## IV. STANDARD OF REVIEW

### A. Summary Judgment

The role of summary judgment in civil litigation is to pierce the boilerplate of the pleadings and assay the parties' proof, in an effort to determine whether trial is actually required. *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313 (1st Cir.1995), citing *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1845, 123 L.Ed.2d 470 (1993). Summary judgment is appropriate where the record reveals no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). See *Mendes v. Medtronic, Inc.*, 18 F.3d 13, 15 (1st Cir.1984); *Commercial Union Ins. v. Walbrook Ins. Co.*, 7 F.3d 1047, 1050 (1st Cir.1993), citing *Mesnick v. General Electric Co.*, 950 F.2d 816 (1st Cir. 1991), *cert. denied*, 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992). The Court must view the evidence as a whole, rather

than in isolation. *Mesnick v. General Electric Co.*, 950 F.2d at 824.

The facts must be viewed in the light most favorable to the non-moving party. *Commercial Union Ins. v. Walbrook*, 7 F.3d at 1050. The non-moving party bears the burden of placing at least one material fact into dispute after the moving party shows the absence of any disputed material fact. *Mendes v. Medtronic*, 18 F.3d 13, discussing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). It is inappropriate for a court to determine issues of credibility, since a court may not resolve any credibility assessment in favor of the party seeking summary judgment. *Woodman v. Haemonetics Corp.*, 51 F.3d 1087, 1089, n. 1 (1st Cir.1995), citing *Velez–Gomez, et al. v. SMA Life Assurance Co.*, 8 F.3d 873, 877 (1st Cir.1993).

Once a summary judgment motion has been filed, the party to whom the motion is directed can defeat it only by showing that a trial-worthy issue exists. *McCarthy, supra,* citing *National Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir.1995), *cert. denied,* —— U.S. ——, 115 S.Ct. 2247, 132 L.Ed.2d 255 (1995). The target of the summary judgment motion must affirmatively point to specific facts that demonstrate the existence of an authentic dispute, at least with respect to the issues on which the target bears the ultimate burden of proof. *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir.1990). The factual dispute must be "material" and the dispute over it must be "genuine."

A "genuine" issue is one that only a finder of fact can properly resolve because it may reasonably be resolved in favor of either party and a "material" issue is one that affects the outcome of the suit. *Collins v. Martella*, 17 F.3d 1, 3 n. 3 (1st Cir.1994), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250, 106 S.Ct. 2505, 2510, 2511, 91 L.Ed.2d 202 (1986). Mere allegations or conjecture unsupported in the record are insufficient to raise a genuine issue of material fact. *Horta v. Sullivan*, 4 F.3d 2, 11 (1st Cir.1993). Absent a genuine dispute of material fact, questions of law are appropriate for resolution on summary judgment. *Jimenez*

*v. Peninsular & Oriental Steam Navigation Co.*, 974 F.2d 221, 223 (1st Cir.1992). Appellate review of summary judgment is plenary, since the standard of review requires the trial court to make a legal determination rather than to engage in fact-finding. *Garside v. Osco Drug, Inc.*, 895 F.2d at 48.

## B. *McDonnell Douglas Age Discrimination Analysis*

The Court must intertwine the standard of review for ADEA claims with the summary judgment standard discussed above. The Court of Appeals in *Goldman v. First National Bank of Boston*, 985 F.2d 1113 (1st Cir.1993), set forth a burden-shifting paradigm for age discrimination cases. The burden-shifting framework allocates burdens of production and orders the presentation of evidence so as to progressively sharpen a court's inquiry into the elusive factual issues of intentional discrimination. *Woodman v. Haemonetics Corp.*, 51 F.3d at 1091, citing *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 255 n. 8, 101 S.Ct. 1089, 1095 n. 8, 67 L.Ed.2d 207 (1981). See also *Woods v. Friction Materials, Inc.*, 30 F.3d 255 (1st Cir.1994).

 Plaintiffs alleging age discrimination bear the ultimate burden of proving that their advanced ages were the determinative factor in their discharge. In the present action, therefore, Plaintiff must prove that he would not have been fired but for his being more than forty years old. *Goldman*, 985 F.2d at 1116–1117, citing *Mesnick v. General Electric Co.*, 950 F.2d at 823. Without direct evidence of age discrimination, the Court must apply the burden-shifting framework that the Supreme Court established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–805, 93 S.Ct. 1817, 1824–1825, 36 L.Ed.2d 668 (1973).

 As the first step under *McDonnell Douglas,* the plaintiff-employee must make a *prima facie* showing of discrimination. *Goldman*, 985 F.2d at 1117, citing *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. The *prima facie* elements of discrimination are as follows: (1) plaintiff was at least forty years old; (2) plaintiff met the employer's

legitimate job performance expectations; (3) plaintiff experienced adverse employment action; and (4) plaintiff was replaced by a person younger than forty with roughly equivalent job qualifications. *Id.*

Once a plaintiff-employee establishes a *prima facie* showing of discrimination, a presumption is created that the defendant-employer unlawfully discriminated against the employee. *Goldman,* 985 F.2d at 1117, citing *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094. At this point in the burden-shifting paradigm, the defendant-employer must articulate a legitimate, non-discriminatory reason for the plaintiff's termination. *Goldman,* 985 F.2d at 1117, citing *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. If the defendant sustains its burden of production, the presumption of unlawful age discrimination dissipates. At the next stage in the paradigm, the plaintiff must demonstrate that the defendant's proffered reason for the employment termination was simply a pretext for age discrimination. *Goldman,* 985 F.2d at 1117. It is not enough for the plaintiff simply to cast doubt on the employer's justification for the termination of employment. The plaintiff must present a sufficient showing that a discriminatory animus motivated the action. *Goldman,* 985 F.2d at 1117, citing *Lawrence,* 980 F.2d at 69–70. The burden of persuasion remains with the plaintiff at all times. *Goldman,* 985 F.2d at 1117, citing *Lawrence v. Northrop Corp.,* 980 F.2d 66, 68–69 (1st Cir.1992).

A court may consider both direct and indirect evidence of an employer's discriminatory motive. However, the evidence as a whole must be sufficient for a reasonable fact-finder to infer that age animus motivated the employer's decision to terminate the plaintiff's employment. *Goldman,* 985 F.2d at 1117. The plaintiff must adduce minimally sufficient evidence of pretext and discriminatory animus. *Id.* If the circumstances surrounding plaintiff's termination show that the employer's justification was not the actual motive, a court may find that the plaintiff-employee has raised a reasonable inference of age discrimination. Ultimately, though, "the plaintiff-employee cannot avert summary judgment if the record is devoid of direct and circumstantial evidence of discriminatory animus on the part of the employer." *Goldman,* 985 F.2d at 1118, citing *Lawrence,* 980 F.2d at 69–70 n. 1. If the plaintiff-employee has proffered sufficient admissible evidence to prove by a preponderance of the evidence each essential element in its *prima facie* case *and* that the defendant-employer's justification for the challenged employment action was merely a pretext for impermissible age discrimination, the defendant-employer's motion for summary judgment cannot succeed. *Woodman* 51 F.3d at 1091–92, citing *Vega v. Kodak Caribbean, Ltd.,* 3 F.3d 476, 478–79 (1st Cir.1993).

## V. DISCUSSION

Plaintiff and Defendants attempt to achieve summary judgment at different stages of the *McDonnell Douglas* analysis. Defendants argue that Plaintiff is not able to meet even his initial burden of presenting a *prima facie* case of age discrimination. Plaintiff, on the other hand, argues that Defendants have failed to present a legitimate business reason for terminating Plaintiff. Ironically, although motions for summary judgment typically occur in the absence of any disputed fact, the parties do not agree that there are no facts in dispute.

As described, Plaintiff bears the burden of proving that he would not have been terminated but for his age. *LeBlanc v. Great Am. Ins. Co.,* 6 F.3d 836, 842 (1st Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994), quoting *Freeman v. Package Mach. Co.,* 865 F.d 1331, 1335 (1st Cir.1988). With respect to the first step under *McDonnell Douglas,* Plaintiff has shown that he was at least forty years old, was meeting Defendants' legitimate job performance expectations, and was replaced by a man in his thirties with roughly equivalent job qualifications. Relying on *Hazel v. U.S. Postmaster General,* 7 F.3d 1 (1st Cir.1993), Defendants counter that Plaintiff was not involuntarily terminated and is therefore unable to meet the fourth element of his *prima facie* case.

The Court finds, however, that *Hazel* is distinguishable from the present action. First, Plaintiff did not simply walk away from his employment, as did the employee in *Hazel.* Plaintiff did not choose to terminate his employment—he simply refused to sign a confidentiality agreement and, as a result, was terminated against his will. The confidentiality agreement contained provisions that would have, for example, limited Plaintiff's right to take any other job, either as an employee or a consultant of another business, without Hazen's permission, which was one of many conditions too oppressive to motivate Plaintiff to sign. The Court finds, for purposes of summary judgment, that Plaintiff was involuntarily discharged. See *Calhoun v. Acme Cleveland Corp.,* 798 F.2d 559, 561 (1st Cir.1986).

Second, in *Hazel,* Judge Keeton addressed the question of termination, not at the summary judgment stage, but at a bench trial after hearing testimony as the trier of fact. Finally, Defendants have already attempted to convince the Court of Appeals, without success, that *Hazel* is controlling here. Since the order remanding the ADEA count for a new trial did not explicitly address *Hazel,* the Court of Appeals evidently chose not to apply the holding in *Hazel* to the present matter. This Court's own review of *Hazel* has determined that it is not controlling. Accordingly, Plaintiff has been able to meet his initial burden of proof.

■ With respect to the second stage in the *McDonnell Douglas* analysis, Defendants have articulated a legitimate, non-discriminatory reason for the Plaintiff's termination— pension interference—which, while unsavory, does not run afoul of the ADEA. Indeed, Defendants have already been found liable to Plaintiff for pension interference, properly raised in the context of Plaintiff's other claims. Defendants have also articulated additional legitimate, non-discriminatory reasons for their actions—the confidentiality agreement was to limit Plaintiffs' outside activities and preserve the confidentiality of Defendants' proprietary methods, given Plaintiff's potentially competitive activities with his son.

Plaintiff argues, however, that he is entitled to summary judgment at this stage because Defendants are precluded from presenting legitimate non-discriminatory reasons for terminating him. Plaintiff argues that Defendants' reasons for terminating him were already litigated and rejected by the jury. In this regard, the Court of Appeals' *en banc* order of June 27, 1994 restricts Plaintiff's assertions as much as it restricts Defendants' claims with respect to *Hazel.* The Court of Appeals has already considered and rejected Plaintiff's request that, with respect to the ADEA claim, it order a new trial limited to particular elements of liability.[3] Accordingly, Defendants' burden of production has been met and, pursuant to *McDonnell Douglas,* the presumption of unlawful age discrimination disappears.

■ At the third stage in the *McDonnell Douglas* paradigm, Plaintiff needs to demonstrate that the Defendants' proffered reason for the employment termination was simply a pretext for age discrimination. Plaintiff may rely upon the same evidence to establish both the pretext and the discrimination, provided that information is adequate to enable a rational fact-finder to reasonably infer that intentional age-based discrimination was a determinative factor in the adverse employment action. *Woodman* 51 F.3d at 1092, citing *Goldman,* 985 F.2d at 1117–8.

■ The fact-finder is permitted to infer the intentional age-based discrimination required to enable the plaintiff-employee to prevail on the merits as long as the elements of a *prima facie* case combine with the fact-finder's belief that the basis for dismissing the employee was merely pretextual. *Woodman* 51 F.3d at 1091, citing *St. Mary's,* —— U.S. at ——, 113 S.Ct. at 2749. In *St. Mary's Honor Ctr. v. Hicks,* where the District Court conducted a bench trial, the Supreme Court stated that the trial court acted properly when it disbelieved the employer's reasons for termination. No credibility as-

---

3. Plaintiff also requested the Court of Appeals to order a retrial of the wrongful discharge and fraud counts. The court rejected Plaintiff's request because it did not have jurisdiction over those claims.

sessment can occur at the summary judgment stage, since all issues of material fact, including issues of credibility and reasonable inferences, must be found in favor of Plaintiff. *St. Mary's,* —— U.S. at ——, n. 3, 113 S.Ct. at 2748, n. 3.

■ In the present matter, Plaintiff acknowledges that there is no direct evidence of age discrimination, but claims that he need not point to a "smoking gun" to prove his ADEA claim. *Goldman,* 985 F.2d at 1119. Rather, Plaintiff has evidenced several facts that demonstrate age animus on the part of Defendants, without relying on pension interference as evidence of age discrimination. First, Plaintiff was the only employee asked to sign a confidentiality agreement in order to retain his job. None of Plaintiff's coworkers, all in their thirties, were required to sign confidentiality agreements. Second, Plaintiff was replaced by a younger employee who was in his thirties, and the terms of his contract were more generous concerning severance and less restrictive concerning non-competition than those offered to Plaintiff. Finally, it appears that both of the Hazens made disparaging remarks about Plaintiff's age.

Although no single factor creates an adequate claim of age animus, taken together, the Court finds sufficient circumstantial evidence of possible age discrimination. *Mesnick,* 950 F.2d at 826. While Plaintiff cannot avoid summary judgment if the record is devoid of direct or circumstantial animus on the part of Defendants, the facts adduced demonstrate that Defendants' decision to terminate Plaintiff could have been a pretext for age discrimination. In addition, material facts are disputed by the parties. As a result, the matter must go to trial, as already determined by the Court of Appeals. Accordingly, neither Plaintiff nor Defendants are entitled to judgment as a matter of law.

It will be left to the trial court to determine how much pension interference information to admit into evidence. The Supreme Court has indicated in this matter that there may be a "correlation" between pension interference and age discrimination when discussing "dual liability" for ERISA violations and age discrimination. *Biggins,* —— U.S. at ——, 113 S.Ct. at 1707. Thus, the trial judge will ultimately determine whether to allow into evidence the following: (1) the potential correlation between pension interference and age discrimination; (2) dual motivation based on age and pension status, triggering the ADEA and ERISA, respectively; and (3) any indication that the decision to terminate was specifically based on age. Since the Court of Appeals' remand provided no specific guidance for the "full new trial" it ordered, the parties will be left to bring various motions *in limine* regarding the admissibility of evidence of pension interference and ERISA violations.

## VI. CONCLUSION

For the above reasons, the Court recommends that the Plaintiff's and Defendants' cross motions for summary judgment be DENIED.[4]

---

4. The parties are advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court within ten (10) days of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See U.S. v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir. 1986); *U.S. v. Vega,* 678 F.2d 376, 379 (1st Cir.1982). *See also Thomas v. Arn,* 474 U.S. 140, 154–55, 106 S.Ct. 466, 474–75, 88 L.Ed.2d 435 (1985), *reh'g denied,* 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986).